# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

*In the Matter of the Search of*

4170 South Nevada Street (manhole)
St. Francis, Wisconsin, 54313

**APPLICATION & AFFIDAVIT
FOR SEARCH WARRANT**

**Case Number:** 11 - M - 539

I, John Singler, being first duly sworn depose and state:

I am a Special Agent of the United States Department of Justice, Environmental Protection Agency (EPA), and have reason to believe that on the property known as:

**The monitoring manhole is located adjacent to the front entrance of the Fontarome's office building, located at 4170 South Nevada Street, Saint Francis, WI. The monitoring manhole is located approximately five (5) feet west of Fontarome's southern building on the property. The manhole cover is made of metal and is dark black and rust in color. Fontarome Chemical maintains two buildings at the property address listed above. The northern building is made of light cream-colored stone and has a purple railing on the southwest corner. The southern building is made of light cream-colored stone and has a white sign with purple letters which reads "Fontarome Chemical, Inc." The two buildings are separated by a paved area with parking spots for employees. There is an additional paved parking area along the east side of the two buildings.**

in the Eastern District of Wisconsin, there is now concealed certain property, namely: The items described in **Attachment A**, which constitutes evidence of violations of **Title 31 U.S.C. Section 1251 and 1319(c)(2).**

The facts to support a finding of Probable Cause are as follows: **Please see attached affidavit.**

Continued on the attached sheet and made a part hereof. √ Yes ___ No

Sworn to before me, and subscribed in my presence

Signature of Affiant: John Singler

December 8th, 2011
Date and time issued
at 9:15 AM

at <u>Milwaukee, Wisconsin</u>
City and State

HONORABLE WILLIAM E. CALLAHAN JR.
<u>United States Magistrate Judge</u>
Name & Title of Judicial Officer

Signature of Judicial Officer

UNITED STATES DISTRICT COURT )
                             )
EASTERN DISTRICT OF WISCONSIN )


<u>AFFIDAVIT</u>

I, John C. Singler, being duly sworn upon oath, depose and state as follows:

1.  I am currently employed as a Special Agent of the United States Environmental Protection Agency, Criminal Investigation Division (hereafter, "EPA").  I have been an EPA Special Agent since October 1996.  My duties as an EPA Special Agent are to conduct and assist in the investigation of a wide range of federal criminal violations relevant to environmental law.  I am a graduate of the Federal Law Enforcement Training Center ten-week Criminal Investigator Training Program as well as the eight-week Environmental Investigations Basic Course.   In my tenure with EPA, I have had experience in the detection and investigation of environmental crime, including violations of the Federal Water Pollution Control Act of 1972, as amended, commonly referred to as the Clean Water Act (CWA), Title 33, United States Code, §§ 1251 et seq. and relevant regulations and ordinances.  I relate the facts stated in this affidavit based upon my training, education, and experience in the enforcement of federal environmental and related

1

criminal laws and upon my conversations with witnesses, other government agents, and relevant documents.

2. The information in this affidavit is not an exhaustive account of my knowledge of the events described herein. Rather, this affidavit is a true and accurate statement of facts necessary to establish probable cause to believe that evidence of CWA violations, including Title 33 United States Code §§ 1251 and 1319(c)(2), knowing violations of CWA, exists on or under the property of FONTAROME CHEMICAL Company. The purpose of obtaining this search warrant is to seek judicial authorization for a "delayed notification" warrant allowing EPA CID and associated technical personnel to install a covert sampling device on FONTAROME property to obtain readings of its discharges to the municipal sewer system. The information the government is seeking to obtain from the covert sampling device is identified in Attachment A.

3. This affidavit is submitted in support of an application for a search warrant to enter the monitoring manhole located adjacent to the front entrance of the Fontarome's office building, located at 4170 South Nevada Street, Saint Francis, WI. The monitoring manhole is located approximately five (5) feet west of Fontarome's southern building on the property. The manhole cover is made of metal and is dark black and rust in color. Fontarome Chemical maintains two buildings at the property address listed above. The northern

2

building is made of light cream-colored stone and has a purple railing on the southwest corner.  The southern building is made of light cream-colored stone and has a white sign with purple letters which reads "Fontarome Chemical, Inc."  The two buildings are separated by a paved area with parking spots for employees.  There is an additional paved area along the east side of the two buildings.

4.    Sources of pollution which discharge to surface waters are required to obtain a permit under the CWA's National Permit Discharge Elimination System ("NPDES").  See 33 U.S.C. Section 1342.  In addition, sources of pollution which discharge to municipal sewer systems are also regulated under the CWA.  Industrial waste discharged to municipal sewage plants (referred to in regulations as "publicly-owned treatment works", or "POTWs") are primarily designed to handle residential (septic) waste.  Industrial wastes may contain metals or other types of pollutants which will either pass through a POTW, contaminating its wastewater discharge, or wind up contaminating the POTWs sewage sludge.  As a result, the Clean Water Act authorizes EPA to promulgate regulations directly applicable to many industrial sources of pollution which discharge to sewers.  See 33 U.S.C. Section 1317(b).  These regulations require industrial users of sewer systems to "pretreat" their wastes before they are discharged.  EPA has promulgated several types of pretreatment regulations, including regulations applicable to

3

specific categories of industry, including organic chemical manufacturing and pharmaceutical manufacturing (See 40 CFR Sections 439 and 414). Discharges to sewers in violation of pretreatment standards are prohibited by 33 U.S.C. Section 1317(d), and negligent or knowing violations are made a crime by virtue of 33 U.S.C. Section 1319(c)(1) and (2).

5. In addition to federally-promulgated regulations, EPA can also enforce wastewater treatment ordinances established by POTWs if approved by EPA. POTWs are required by their CWA permits to enact and enforce ordinances which limit the amount of pollutants which industry is allowed to discharge into the sewer system. See 33 U.S.C. Section 1342(a)(3) and (b)(8). The Milwaukee Metropolitan Sewerage District (MMSD) owns and operates the sewage treatment facility which serves the Milwaukee area, and possesses a CWA permit for the discharges from its sewage treatment plants. As a condition of that permit, the MMSD has enacted a sewer ordinance, which was approved under the CWA.

6. According to documents I have reviewed in MMSD files, FONTAROME manufactures flavors, fragrances and pharmaceutical active ingredients at a facility located at 4170 South Nevada Avenue, Saint Francis, Wisconsin. FONTAROME's discharges are routed to the MMSD POTW. Pursuant to that ordinance, the MMSD issued three successive pretreatment permits to FONTAROME, in effect from

4

February 2001 to February 2006, June 2005 to June 2010 and from August 2009 until August 2015.

7. MMSD placed FONTAROME CHEMICAL on MMSD's Significant Noncompliance List in 2002, 2005, 2006, and 2007. FONTAROME was placed on MMSD's Significant Noncompliance list for exceeding the limits of FONTAROME's discharge permit in place at that time.

8. On January 4, 2010, FONTAROME notified MMSD via email that it could not meet the contaminant limits per its discharge permit. FONTAROME employee Andy KOTECKI specifically noted that FONTAROME's wastewater was "much higher than the limit for Toluene." Toluene is an industrial solvent that is often regulated in CWA permits because it is a toxic chemical. KOTECKI stated that he and FONTAROME Chief Operating Officer, Mark MAGNARINI, did not believe it was likely that FONTAROME would ever be able to discharge within the limits of their permit.

9. FONTAROME agreed that it would not discharge industrial waste to the sewer system, and would instead ship all its industrial wastewater off-site for treatment. In addition, FONTAROME informed MMSD that it had cemented shut all the non-toilet drains which led to the sewer system. On August 30, 2010, MMSD notified FONTAROME that MMSD Permit 96.03 was revoked due to the absence of any process wastewater discharges since the permit was issued on August 20, 2009. As a result, FONTAROME currently has no permit to discharge process

5

wastewater to the sewer system.

10.  On or about August 30, 2010, MMSD notified FONTAROME President CARL SHEELEY via letter that the MMSD had revoked FONTAROME's Wastewater Discharge Permit 96.03.  In the letter, MMSD informed FONTAROME President CARL SHEELY that his company would have to apply and obtain a new permit prior to discharging any process wastewater to include the discharges from chemical manufacturing operations.

11.  Any current industrial discharges from the FONTAROME facility to the sewer system would be a violation of the MMSD Ordinance, and therefore a violation of the CWA.

12.  Since rescinding FONTAROME's Wastewater Discharge Permit 96.03, MMSD has sampled in the sewer manhole immediately downstream of the location where FONTAROME's discharges connect to the sewer system from March 1, 2011 through October 5, 2011, and has detected volatile organic chemical concentrations.  During the time period of March 1, 2011, and October 5, 2011, MMSD has noted the presence of six different compounds to include carbon tetrachloride, chloroethane, chloroform, methyl tert-butyl ether (MTBE), methylene chloride, and toluene in the sewer manhole immediately downstream of the location where FONTAROME's discharges connect to the sewer system.  MMSD is aware from its records that there are two additional users on the line, including PDQ Tooling and Wixon, Inc.  PDQ Tooling

6

is a manufacturer of cutting tools and machinery parts. PDQ is upstream of FONTAROME and has a very low flow of sanitary waste and minute amounts of waste from their production area according to MMSD Senior Industrial Waste Engineer Thomas A. Nowicki. Wixon Inc. is a manufacturer of seasonings, flavor systems and ingredients for the food and beverage industry.

13. MMSD has never visited PDQ Tooling's facility due to the fact MMSD does not expect an industrial flow from the PD Tooling Facility.

14. MMSD monitors Wixon Inc's industrial flow. In October 2011, MMSD conducted a month-long sampling for pH of the discharge. A pH violation by Wixon Inc. was noted by MMSD on October 5, 2011. MMSD recorded a pH violation of 4.5 with MMSD regulations requiring a lower limit of 5.0. A composite sample of Wixon's discharge was taken on November 28, 2011, results are pending. MMSD's Nowicki stated that Wixon uses large quantities of vinegar and other food supplements, but little if any Chloroethane, Methyl Tert-Butyl Ether, or Methylene Chloride.

INFORMATION OBTAINED FROM CONFIDENTIAL SOURCE #1

15. CS#1 is an employee, in good standing, with FONTAROME CHEMICAL. CS#1 communicated his/her concerns regarding FONTAROME to an environmental advocacy group prior to providing information to law enforcement.

7

16. CS#1 advised agents that in or around 2009, he/she observed and heard CARL SHEELEY order FONTAROME employees to cover the main drain valves with cardboard prior to pouring cement on the valves. FONTAROME employees then cemented over the cardboard with a thin layer of cement so the valves could be easily accessed in the future.

17. CS#1 advised agents that in or around 2009, he/she observed and heard CARL SHEELEY direct an employee to create a diagram to falsely show FONTAROME's drains and drain valves were cemented shut. CS#1 reported that a FONTAROME employee showed this diagram to MMSD officials as proof that the drains and drain valves were cemented shut. CS#1 advised that the side drains in the three production areas of FONTAROME remain open to the sewer lines.

18. CS#1 further advised agents that there are numerous small drains located throughout FONTAROME's facility which are open and lead to St. Francis sewer lines. CS#1 reported, based on his/her knowledge of FONTAROME's facility, that all wastes and spent chemicals sent to these small drains enter St. Francis sewer lines.

19. Prior to FONTAROME cementing the drains in 2009, CS#1 observed and heard FONTAROME managers direct employees to wash down the drains in the production area of the facility prior to scheduled MMSD visits on at least two separate occasions.

20. CS#1 has observed FONTAROME employees move spent chemicals and wastes to one of two storage tanks located outside on the south

8

side of FONTAROME's building.  Based on CS#1's knowledge of FONTAROME's production process, CS#1 reported wastes from reactor vessels are either stored in the exterior waste tanks, resent to the reactors through a series of hoses, or are pushed into the floor drains.  CS#1 has seen FONTAROME production employees push chemicals to the floor drains within the last four weeks.  CS#1 believes that the chemical waste pushed to the floor drains are allowed to drain into the sewer lines below.

21.  In or around September 2011, CS#1 reported that a FONTAROME CHEMICAL waste disposal manager was unable to locate approximately 150 gallons of an unknown chemical.  CS#1 reported the waste manager stated he had accounted for the chemical's location the previous week but that he (Waste Disposal Manager) was now unable to locate the material.  In or around the end of September 2011 or early October 2011, CS#1 encountered an empty container that he/she believed was used to store the missing chemicals.  CS#1 observed corrosion on the container, chemical on the floor, and production employees pushing chemical waste to the floor drain.

22.  Based on the foregoing information and my experience, I believe there is probable cause to believe FONTAROME is discharging sewage industrial waste and/or other waste pollutants through its sewage line, in violation of the CWA, Title 33, United States Code, §§1251 and 1319(c)(2) and related federal regulations.

9

## ATTACHMENT A

Items To Be Seized:

1. Waste liquid and solid materials discharged from the Fontarome facility through a discharge pipe which is accessible via a manhole on Fontarome property, as well as samples of air quality taken for safety purposes within or above the manhole.

2. PH readings.

10

